IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

| | |
|---|---|
| BIG BINDER EXPRESS, LLC AND RAYMOND GOODLIN, | PLAINTIFFS |
| V. | NO: 3:19CV22-M-P |
| LIBERTY MUTUAL FIRE INSURANCE COMPANY; et al. | DEFENDANTS |
| DARLING INGREDIENTS, INC. | INTERVENOR PLAINTIFF |
| V. | |
| TABB ROSS, JEFF CRABTREE, TRI-STATE IDEALEASE, INC. and TRI-STATE INTERNATIONAL TRUCKS | INTERVENOR DEFENDANTS |

**ORDER**

This court presently has before it the motion [165] of the Intervenor Defendants Tab Ross, Jeff Crabtree, Tri-State Idealease, Inc., and Tri-State International, Trucks, Inc. (collectively referred to as "Intervenor Defendants"), seeking its recusal. Having considered their memorandum and submissions, this court is prepared to rule.

In addressing the motion to recuse [165], this court begins by noting the simple fact that the Intervenor Defendants include the members and managers of Big Binder, the very same company which this court was reversed by the Fifth Circuit for favoring in its original rulings in this case. Big Binder and the Intervenor Defendants (collectively "the Binder Defendants") apparently believe that, at some point in this litigation, this court switched from ruling in their favor to being so biased against them as to require its recusal. That is, of course, absurd. The reality is that, to the extent that this court has expressed a lack of patience with the Binder

1

Defendants in recent months, it is based solely upon their actions in this case, which are obviously calculated to escape the liability which confronts them in light of the Fifth Circuit's ruling.

The Binder Defendants seem to believe that they have discovered "one weird trick" to escape a federal appellate court ruling against them, namely to have Big Binder cease to exist and to thereupon have the Intervenor Defendants each assert jurisdictional and other defenses to liability, thereby leaving nobody to answer financially for the grievous injuries arising from the accident in this case. Indeed, in what the Binder Defendants would apparently have this court believe is an extraordinary coincidence, Big Binder filed a notice of dissolution with the Tennessee Secretary of State on March 3, 2021, which was eight days after the issuance of the Fifth Circuit's mandate in this case. [Docket entry 135, exhibit A at 1]. The circumstances surrounding this dissolution appear all the more suspicious in light of Darling's allegation, which is apparently undisputed, that "Big Binder and Tri-State International obtained over $900,000 from the federal government in now-forgiven" Covid relief funds. [Motion to supplement at 6]. To the extent that this court's rulings in recent months express a certain lack of patience, or even exasperation, with the Binder Defendants, it arises purely from their actions described above.

In arguing that this court should recuse itself from this case, the Intervenor Defendants argue that it "prejudged" their arguments and demonstrated bias in its November 3, 2021 order by writing that:

> Big Binder and its members/managers have been aware since the accident underlying this lawsuit, which occurred in May of 2018, that they would likely have some sort of financial responsibility to the passengers they maimed and killed. Big Binder was made aware on February 10, 2020 that it was on the hook for attorneys' fees, with the amount to be determined at a later date, at the very least. Then Big Binder was dealt another financial blow when the Fifth Circuit sent this case back to this Court for determination of its responsibility for the $1 million insurance deductible which was paid in this case by Darling. This dissolution and termination is nothing more than the members/managers'

2

> attempt to evade paying the judgments it knows it owes to Darling. The Court will not allow Big Binder, its members and managers to perpetrate such a fraud.

[Slip op. at 3].

This court thus stated its view, in denying Big Binder's motion to dismiss, that its dissolution represents a transparent attempt to avoid the liability which it faces in this case. While this court still holds this view today, it emphasizes that it only wrote the above words after considering what Big Binder had to say in its Motion to Dismiss, which consisted of less than two pages of very predictable arguments that it no longer existed and could thus not be held liable in this case. For example, Big Binder argued that:

> 3. Because Big Binder has been dissolved and terminated, with no funds available for distribution to members, there can be no recovery of funds from Big Binder as sought in Darling's Supplemental Complaint.

[Motion to Dismiss at 2]. This argument came as no surprise to this court, since it, frankly, believed that it knew exactly what Big Binder's intentions were when it first learned of its dissolution.

In seeking this court's recusal, the Intervenor Defendants argue that it improperly granted Darling's motion to file a supplemental complaint four days after its filing without waiting for a response in opposition. While it may at least be argued that this court acted hastily in this regard, it emphasizes that this case is one of the oldest on its docket, and it therefore deems it important to move it along as quickly as possible. Moreover, this court emphasized in its order that, while it was allowing Darling to file a supplemental complaint, it was doing so in the belief that the best way to test the validity of the allegations therein was through the filing of motions to dismiss. Specifically, this court wrote that it "finds that the better approach is to allow the supplemental complaint to be filed, and for Big Binder and its principals to either file an answer, Rule 12(b)(6)

3

motion or Rule 56 motion to determine futility." [September 20, 2021 order at 2]. This court thus made it clear that it would not rule upon the validity of the complaint until considering any answers and/or motions to dismiss which were filed, and, true to its word, it only ruled upon Big Binder's motion to dismiss after considering the arguments which it chose to submit.

In seeking this court's recusal, the Intervenor Defendants note that it expressed its inclination to rule against them as well, even though they had not yet filed any answers or motions to dismiss. While this is, to some extent, true, this court emphasizes that it regards the dissolution of Big Binder in this case as being an utterly transparent attempt to avoid accountability and liability, and, that being the case, it make no apologies for having the basic common sense to recognize the game being played by its "members and managers" in this case. At the same time, this court did not actually resolve the liability, or lack thereof, of the Intervenor Defendants in its November 3 order, and any inclinations expressed were subject to being changed if future submissions dictated such.

This court believes that, to the extent that it can be said to have "prejudged" the Intervenor Defendants' arguments relating to Big Binder's dissolution, it did so in the same manner in which an individual who receives a call informing him that he won a million dollars in the Nigerian Lottery prejudges the nature of that call. This court submits that the opening sentences of any such phone call would make its fraudulent nature clear to any reasonably intelligent person, and the same can be said for the arguments relating to Big Binder's dissolution in this case. Federal judges do not check their common sense at the door when they enter their chambers, and it is very often the case that the lack of validity of a particular legal argument is apparent long before briefing has been completed. This court certainly believes that to be the case here.

4

The Intervenor Defendants' next recusal argument is that this court expressed bias against them in writing that "Big Binder and its members/managers have been aware since the accident underlying this lawsuit, which occurred in May of 2018, that they would likely have some sort of financial responsibility to the passengers they maimed and killed." [*Id.* at 3] In objecting to this language, the Intervenor Defendants write that:

> While Ross and Crabtree were the members of Big Binder at the time of the accident, neither of them were involved in the accident itself and certainly neither of them "maimed [nor] killed" anyone. Such hostile language is entirely misdirected at Ross and Crabtree, further evidencing Judge Mills's bias against them.

[Brief at 9]. This court regards this argument as disingenuous at best, since, in writing the above words, it was clearly referring to *respondeat superior* liability for the accident in this case, and not expressing any belief that Ross and Crabtree were personally involved in it. Indeed, courts commonly use such language in expressing their view that corporations and other such business defendants should be held liable for the negligence of their employees, and the above-quoted words were plainly written to express its view that *respondeat superior* liability existed in this context. This court therefore regards this stated basis for recusal as clearly lacking merit.

After considering its actions in this case, this court believes that, at worst, it demonstrated a certain degree of impatience with the notion that it should allow arguments which it believes to be fraudulent to play out at length in its courtroom. Moreover, while this court does not regard any such impatience as requiring its recusal, it is, as always, very much concerned with every party in its courtroom believing that they were afforded a full and unbiased hearing. Given that the Intervenor Defendants clearly harbor doubts in this regard, this court concludes that the better

5

course of action is to grant their motion to recuse [165] and allow a different judge to resolve the remaining issues in this case.

These considerations aside, this court frankly believes that the Binder Defendants are like so many Brer Rabbits who, lacking any valid bases for avoiding the Fifth Circuit's judgment, would like to have this case thrown into the briar patch of disingenuous arguments about a supposedly biased judge (who originally ruled in their favor). Unfortunately, this court may have played into their hands in this regard by allowing its lack of patience with their post-appeal tactics to lead it into ruling a bit hastily in two of its orders. By recusing itself from this case, this court takes the bias issue off the table, and it allows the Binder Defendants to stand or fall based on the strength of their legal arguments. If necessary, they may take their arguments to the Fifth Circuit and explain to that court why their transparent ploy should allow them to circumvent its judgment in this case. At any rate, this court will not allow manufactured bias issues to distract from the real issues in this case, and the motion for recusal [165] will therefore be granted.

It is therefore ordered that the motion for recusal [165] is granted.

This the 6th day of December, 2021.

/s/ Michael P. Mills
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**